IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARTIN J. WALSH, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, <br><br> Plaintiff, <br><br> v. <br><br> BICALLIS, LLC, BRYAN HILL, and BICALLIS, LLC 401(K) PLAN <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : Civil Action No. <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**COMPLAINT**

Martin J. Walsh, Secretary of Labor, United States Department of Labor, hereby alleges:

**JURISDICTION AND VENUE**

1. This cause of action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and is brought by the Secretary under Sections 502(a)(2) and (5) of ERISA, 29 U.S.C. §§ 1132(a)(2) and (5), to enjoin acts and practices which violate the provisions of Title I of ERISA, to obtain appropriate relief for breaches of fiduciary duty under ERISA Section 409, 29 U.S.C. § 1109, and to obtain such other further relief as may be appropriate to redress violations and enforce the provisions of Title I of ERISA.

2. This Court has subject matter jurisdiction over this action under Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3. The Bicallis, LLC 401(k) Plan ("Plan") is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3) that offers retirement benefits to its participants, who are employees of Bicallis, LLC ("Company"). As such, the Plan is subject to

the coverage of the Act, under Section 4(a) of ERISA, 29 U.S.C. § 1003(a).

4. The Plan is administered in Baltimore, Maryland. Venue with respect to this action lies in the District of Maryland under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

## THE PARTIES

5. Under 29 U.S.C. § 1132(a)(2) and (5), the Secretary has the authority to enforce Title I of ERISA by filing civil actions to obtain remedies for violations of the statute.

6. In August 2009, the Company was formed as an LLC in the State of Delaware. It was registered in Maryland in May 2014. The Company has been headquartered in Baltimore, Maryland, at various addresses. Its business is to provide, among other services, logistics, engineering, and management support to various arms of the federal government.

7. At all relevant times, the Company has been the Plan Sponsor and Plan Administrator. As the Plan Administrator, the Company is a fiduciary to the Plan.

8. Further, at all relevant times, the Company exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and had discretionary authority or discretionary responsibility in the administration of the Plan. The Company, therefore, is a fiduciary of the Plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), and a party-in-interest as that term is defined in Sections 3(14)(A) and (C) of ERISA, 29 U.S.C. § 1002(14)(A) and (C).

9. At all relevant times, Bryan Hill ("Hill") was the owner of the Company, worked as a senior officer for the Company, and was a Trustee of the Plan. As the Plan's Trustee, Hill is

a fiduciary to the Plan.

10. Further, at all relevant times, Hill exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and had discretionary authority or discretionary responsibility in the administration of the Plan. Hill is, therefore, a fiduciary of the Plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), and a party-in-interest as that term is defined in Sections 3(14)(A), (E) and (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (E) and (H).

11. The Plan is a 401(k) plan, and is therefore an employee benefit plan under 29 U.S.C. § 1002(2)(a). The Plan is joined as a party defendant under Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

FACTUAL ALLEGATIONS

    a. **Missing Employee Contributions**

12. The Company established the Plan effective October 1, 2010. The Plan permitted participants—eligible Company employees—to contribute a portion of their pay to the Plan as elective salary deferrals ("employee contributions") through payroll deductions. In addition to these elective participant contributions, the Plan provided for discretionary employer matching contributions and required employer safe harbor contributions.

13. Until October 2017, the Company retained a third party to carry out its payroll process. Beginning in that month, the Company began to directly carry out its payroll. Hill and the Company oversaw and controlled the payroll process, which included the withholding of compensation from employee paychecks for the purpose of making employee contributions to

the Plan.

14. From October 20, 2017 through December 30, 2019, Hill and the Company withheld compensation from employees' paychecks every two weeks based on instructions from the employees to withhold a portion of their wages for the purpose of making contributions to the Plan.

15. From October 20, 2017 through December 30, 2019, Hill and the Company failed to remit all of the withheld employee contributions to the Plan. Instead of being timely deposited in the Plan, these missing funds—Plan assets under ERISA—remained in the Company's business operating account and were used to pay the Company's operating expenses and debts.

16. During this period, employee contributions deducted from payroll but not forwarded to the Plan amounted to at least $51,217.57.

17. Unremitted employee contributions are assets of the Plan within the meaning of ERISA. Hill and the Company exercised discretion and control over these Plan assets and, through that authority, failed to segregate them from the Company's general assets.

18. Hill and the Company failed to ensure that the Plan assets described in paragraph 16, *supra*, were remitted to the Plan.

    **b. Missing Employer Contributions**

19. The terms of the Plan provided for discretionary matching contributions to Plan participants' accounts from the Company. The Company's payroll records between October 20, 2017 and December 30, 2019 demonstrate that it elected to declare discretionary matching contributions into Plan participants' accounts.

20. During this period, however, the Company failed to remit the full amount of these promised employer contributions. Instead of being timely deposited in the Plan, these missing

funds remained in the Company's business operating account and were used to pay the Company's operating expenses and debts.

21. During this period, Company matching contributions were deficient by at least $25,329.24.

22. The terms of the Plan also required the Company to make a mandatory Safe Harbor contribution to each eligible Plan participant's account. The amount of this required contribution was 3% of each Plan participant's annual compensation. Between October 20, 2017 and December 30, 2019, the Company failed to remit the full amount of these mandatory Safe Harbor contributions. Instead of being timely deposited in the Plan, these missing funds remained in the Company's business operating account and were used to pay the Company's operating expenses and debts.

23. During this period, Safe Harbor contributions were deficient by at least $46,250.68.

24. Between October 20, 2017 and December 30, 2019, the Company had sufficient assets to make the contributions set forth in paragraphs 21–23 *supra*, which the Plan's terms required. Notwithstanding this financial ability to pay, the Company failed to timely pay the required employer contributions.

25. As Plan fiduciaries, Hill and the Company, had a duty to pursue claims on behalf of the Plan for which there was a reasonable likelihood of recovery. Notwithstanding a reasonable likelihood of recovery—demonstrated by the Company's financial ability to pay—Hill and the Company failed to take any action to compel the Company to pay the missing employer contributions or pay the missing Safe Harbor contributions.

### c. Interest

26. As of May 15, 2021, interest due on unremitted employee contributions and unremitted employer matching contributions is $16,140.53 and $5,070.26 on unremitted Safe Harbor contributions.

### d. Failure to Carry Mandatory Fidelity Bond

27. Section 412(a) of ERISA, 29 U.S.C. § 1112(a), requires, with limited exceptions, that ERISA plan fiduciaries and others who "handle[] funds or other property of such a plan" be bonded. Section 412(b) of ERISA, 29 U.S.C. § 1112(b), establishes, *inter alia*, that is unlawful for plan fiduciaries and others to "appl[y], to receive, handle, disburse, or otherwise exercise custody or control of any of the funds or other property of any employee benefit plan, without being bonded as required by subsection (a) . . . ."

28. As evidenced by the Company's 2018 Form 5500 for the Plan—the only Form 5500 filed during the October 20, 2017 to December 30, 2019 period—the Company and Hill failed to secure a fidelity bond for the Plan, in violation of Section 412(a) of ERISA, 29 U.S.C. § 1112(a).

## VIOLATIONS

29. The Secretary re-alleges and incorporates by reference Paragraphs 1 through 28 of this Complaint.

30. Unremitted employee contributions are assets of the Plan within the meaning of ERISA. Hill and the Company failed to ensure that these Plan assets were timely remitted to the Plan after Hill and the Company withheld these funds from participants' paychecks.

31. With regard to unremitted employer discretionary matching contributions, once the Company elected to make them, the Plan's terms required the Company to pay those amounts

into Plan participants' accounts. With regard to safe harbor contributions, the Plan's terms required the Company to annually pay those amounts into Plan participants' accounts. The Company, however, did not timely pay the full amount of either type of employer contribution. Recovery of these missing contributions was a claim belonging to the Plan, and there was a reasonable likelihood of recovery. Hill and the Company, as fiduciaries of the Plan, therefore had a duty to pursue remittance of these missing funds on behalf of the Plan. By failing to take action to compel the Company to pay missing employer contributions, Hill and the Company breached their fiduciary duties to the Plan.

32. Hill and the Company each knowingly participated in or knowingly undertook to conceal acts or omissions of the other that they knew were violations of ERISA.

33. Hill and the Company each failed to comply with ERISA Section 404(a)(1) in the administration of their specific fiduciary responsibilities and each enabled the other to commit breaches of ERISA.

34. Hill and the Company each knew that the other had violated ERISA, but they did not make reasonable efforts under the circumstances to remedy the breaches.

35. By the actions and conduct described in this Complaint, Hill and the Company, as fiduciaries of the Plan:

    a. failed to hold all assets of the Plan in trust, in violation of Section 403(a) of ERISA, 29 U.S.C. § 1103(a);

    b. failed to ensure that the Plan's assets did not inure to the benefit of the Company, in violation of Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1);

    c. failed to discharge their duties with respect to the Plan solely in the

    interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A);

d.  failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B);

e.  failed to discharge their duties with respect to the Plan in accordance with the documents and instruments governing the Plan, in violation of Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D);

f.  caused the Plan to engage in transactions which they knew or should have known constituted the direct or indirect transfer of Plan assets to, or use of Plan assets by or for the benefit of a party-in-interest, in violation of Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D);

g.  dealt with assets of the Plan in their own interest or for their own account, in violation of Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1);

h.  failed to maintain an adequate fidelity bond, in violation of Section 412(a) of ERISA, 29 U.S.C. § 1112(a).

i.  participated knowingly in, or knowingly undertook to conceal, acts or

    omissions by the other that they knew to be violations of ERISA, which renders them liable for the other's breaches of fiduciary responsibility under Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(a)(1);

j. failed to comply with Section 404(a)(1) of ERISA in the administration of their specific fiduciary responsibilities and each enabled the other to commit breaches of ERISA, which renders them liable for the other's breaches of fiduciary responsibility under Section 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2); and

k. knew that the other had violated ERISA, but did not make reasonable efforts under the circumstances to remedy the other's breaches, which renders them liable for each other's fiduciary breaches under Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3).

### Prayer for Relief

WHEREFORE, the Secretary prays that the Court issue an Order:

1. Ordering Hill and the Company, jointly and severally, to restore to the Plan all losses, including interest or lost opportunity costs and the cost of an independent fiduciary, which were caused by their fiduciary misconduct;

2. Ordering the Plan to set off any individual account balance of Hill against the amount of losses, including interest or lost opportunity cost, and the cost of an independent fiduciary resulting from his fiduciary breaches, as authorized by 29 U.S.C. § 1056(d)(4), and allocating the account balance to the non-breaching participants, if the losses are not otherwise restored to the Plan by Hill and the Company;

3. Removing Hill and the Company as fiduciaries of the Plan and of any employee

benefit plan for which they act as fiduciaries;

4. Permanently enjoining Hill and the Company from acting directly or indirectly, in any fiduciary capacity, with respect to any employee benefit plan subject to ERISA;

5. Permanently enjoining Hill and the Company from exercising any custody, control, or decision making authority with respect to the assets of any employee benefit plan covered by ERISA;

6. Appointing an independent fiduciary with plenary authority and control with respect to the management and administration of the Plan, including the authority to marshal assets on behalf of the Plan, to pursue claims on behalf of the Plan, and to take all appropriate actions for the administration, termination, and distribution of the Plan—including securing a fidelity bond in an amount that meets the requirements of ERISA § 412, 29 U.S.C. § 1112—with all costs to be borne by Hill and the Company;

7. Ordering Hill and the Company, their agents, employees, service providers, banks, accountants, and attorneys to provide the Secretary and the independent fiduciary with all of the books, documents, and records relating to the finances and administration of the Plan, and to make an accounting to the Secretary and the independent fiduciary of all contributions to the Plan and all transfers, payments, or expenses incurred or paid in connection with the Plan;

8. Barring Hill and the Company from engaging in any future violations of ERISA, and;

9. Awarding the Secretary the costs of this action; and such other relief as is equitable and just.

Respectfully Submitted,

**UNITED STATES DEPARTMENT OF LABOR**

Elena S. Goldstein
Acting Solicitor of Labor

Oscar L. Hampton III
Regional Solicitor

Richard T. Buchanan
Deputy Regional Solicitor

*/s/ Alejandro A. Herrera*
Alejandro A. Herrera
Trial Attorney
PA 326897; NY 5235601

Mailing Address:

U.S. Department of Labor
Office of the Regional Solicitor
1835 Market Street
Mailstop SOL/22
Philadelphia, PA 19103-2968

(215) 861-5136 (voice)
(215) 861-5162 (fax)

herrera.alejandro.a@dol.gov